UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TCUTIMA, INC., <br><br> Plaintiff(s), <br><br> v. <br><br> BUA GROUP, LLC, <br><br> Defendant(s). | Case No.2:24-CV-1130 JCM (NJK) <br><br> ORDER |

    Presently before the court is defendant's motion to dismiss. (ECF No. 15). Plaintiffs filed a response (ECF No. 19), to which defendant replied (ECF No. 20). The court first DENIES defendant's original motion to dismiss (ECF No. 6) as MOOT in light of the plaintiffs' amended complaint ("FAC"). For the reasons stated below, the court GRANTS defendant's present motion to dismiss. (ECF No. 15).

    Also before the court is applicant Pennapa "Penny" Chutima's motion to intervene. (ECF No. 72, 73). Defendant Bua Group filed a response (ECF No. 102), to which Penny replied (ECF No. 124). For the reasons stated below, the court GRANTS the motion solely as a motion to intervene as a party. The applicant must file a separate motion in order to make substitutions in parties.

    Also before the court are several motions relating to the preliminary injunction issued in ECF No. 29. As a preliminary matter, the court finds good cause exists and GRANTS plaintiff's motion for leave to supplement its motion to enforce the preliminary injunction (ECF No. 69). LR 7-2(g). Accordingly, the court will defer ruling on the motion to enforce (ECF No. 39).

**I.     Background**

    This case arises from a commercial dispute between plaintiffs TChutima, Inc. and Chef

1  Saipin Chutima ("Chef Chutima") and defendant Bua Group, LLC.  (ECF No. 10).  Plaintiffs own
2  the local restaurant brand, Lotus of Siam.  (*Id*. at 3).  The parties entered into a Trademark License
3  Agreement in 2021, granting Bua Group the right to open up to three new restaurants under the
4  Lotus of Siam brand.  (*Id*. at 6).  Bua Group thereafter opened a Lotus of Siam location inside Red
5  Rock Casino ("Lotus Redrock").  (*Id*.).

6        The parties' dispute centers primarily on the management and operation of Lotus Redrock.
7  Misunderstandings between the parties apparently escalated leading up to 2024.  Plaintiffs allege
8  in the FAC that Bua Group violated the license agreement by making unauthorized changes to the
9  Lotus Redrock restaurant operations and exceeding the scope of the trademark license.  (*Id*. at 7-
10 9).  Bua Group denies this characterization of events.  (ECF No. 15).  Plaintiffs issued Bua Group
11 a Notice of Default and Demand for Cure in May 2024.  (*Id*. at 13).   Plaintiffs filed this lawsuit
12 two months later citing Bua Group's failure to comply with its Notice and alleging nine causes of
13 action.  (*Id*.).

14       The case is further complicated by an intracompany dispute in Bua Group and the ongoing
15 state court action to resolve it.  *See generally Bua Group, LLC v. Chutima et al,* Case No. A-24-
16 889819-B.  Bua Group is jointly owned by Penny Chutima (daughter of Chef Chutima) and Louis
17 ("Lou") Abin as 50/50 members.  (ECF No. 72, 73).  Bua Group's operating agreement requires
18 unanimity, but the members have been deadlocked since late 2023.  (*Id*. at 5).  Penny argues Lou
19 assumed unilateral control over Bua Group and has "locked her out" of operations and company
20 records.  (*See generally id*.).  Their respective management rights are still in dispute in state court.[1]

21       Penny Chutima now seeks to intervene in this action, arguing Lou should have brought the
22 action as a derivative defendant.  Bua Group also moves to dismiss the third cause of action in
23 plaintiffs' FAC for misappropriation of trade secrets.

24 **II.    Legal Standard**

25     A.  Motion to Dismiss

26       A court may dismiss a complaint for "failure to state a claim upon which relief can be

---

[1] The court does not intend to insert itself in the internal company dispute among Bua Group's members.  But for purposes of this litigation, the court must consider the findings in the State Action as far as they implicate the rights of parties in this action.

1  granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

District courts apply federal pleading standards to state law claims in federal court. *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1021 (9th Cir. 2013) (applying federal pleading standards to action removed from state court). The court, on a motion to dismiss, is limited to the allegations contained in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

If the court grants a Rule 12(b)(6) motion to dismiss, it should grant leave to amend unless the deficiencies cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d

1  655, 658 (9th Cir. 1992).  Under Rule 15(a), the court should "freely" give leave to amend "when
2  justice so requires," and absent "undue delay, bad faith, or dilatory motive on the part of the
3  movant, repeated failure to cure deficiencies by amendments…undue prejudice to the opposing
4  party…futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

   B.  Motion to Intervene

An applicant for intervention as of right must meet the following conditions under Federal Rule of Civil Procedure 24(a)(2): (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.  *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003) (citing *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)).

The applicant bears the burden to prove all four elements. *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006).  However, "the requirements are broadly interpreted in favor of intervention." *Id*. (quoting *United States v. Alisal Water Corp*., 370 F.3d 915, 919).

**III.  Discussion**

   A.  Defendant's Motion to Dismiss

Bua Group now moves to dismiss only the third claim in the FAC—misappropriation of trade secrets under NRS 600A (the Nevada Uniform Trade Secret Act).  (ECF No. 15).  Having considered the parties' arguments, the court finds that although plaintiffs may allege protectable trade secrets, they do not allege sufficient facts to plead a plausible claim for misappropriation.

A misappropriation claim requires the plaintiff show: (1) the existence of a valuable trade secret; (2) the misappropriation of that trade secret through use, disclosure, nondisclosure of use of the trade secret; and (3) that the misappropriation was wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose.  *Frantz v. Johnson*, 116 Nev. 455, 999 P.2d 351, 358 (Nev. 2000).

   *1. Protectable trade secrets*

The threshold question for the court is whether plaintiffs allege protectable trade secrets.

A trade secret is defined under Nevada law as:

> "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code that: (1) derives independent economic value, actual or potential, from not being generally known to, and not readily ascertainable by proper means by the public…; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

NRS §§ 600A.030(5).

Plaintiffs have alleged facts rendering it plausible that the disputed recipes have independent economic value in being kept secret. At the very least, a licensing agreement evidences economic value in the product(s) being licensed. *Costar Group, Inc., v. Loopnet, Inc*., 164 F.Supp.2d 688, 710 (D.Md. 2001) (discussing *Playboy Enters. Inc. v. Sanfilippo*, 46 U.S.P.Q.2d 1350, 1354-56 (1998)) (characterizing a license agreement for photographs as evidence of "independent economic value" in a copyright case). Here, the parties' trademark license agreement also notably restricted all menu responsibilities to plaintiff Chef Chutima as the licensor. (ECF No. 9-4 at ¶ 6.4).

Moreover, the court finds recipes are the type of information or "formulas" from which their creators may derive value in keeping them private. *See* NRS § 600A.030. That is the essence of the food and restaurant business. *See Myung Ga, Inc. v. Myung Ga of MD, Inc*., 2011 U.S. Dist. LEXIS 87496 (extending trade secret protection to Korean restaurant recipes); *Bon Vivant Catering, Inc. v. Duke Univ*., 2015 U.S. Dist. LEXIS 112246 (2015) (holding a general list of menu items is sufficiently pled to survive a motion to dismiss).

The court is also persuaded that plaintiffs committed reasonable efforts to maintaining the privacy of the recipes. Plaintiffs claim in the FAC that only the Chutima family and "very few trusted others" have access to the Lotus of Siam recipes. (ECF No. 10 at ¶ 17, 26). Chefs at the Lotus Flamingo location were allegedly restricted from ever accessing the "trade secret recipes" themselves. (*Id*. at ¶ 22-3). Plaintiffs also kept a separate processing kitchen to prepare Lotus of Siam sauces and other "proprietary recipes" offsite to sell back to its licensee restaurants. (*Id*. at ¶ 25).

Bua Group argues plaintiffs have not met their burden of secrecy because the finished menu

1 items are served to the public where they become readily ascertainable in the public domain. This
2 argument is unavailing as to recipes. Even if the elements of a trade secret are public, if the
3 particular alchemy behind the item as a whole is not, then it can be considered protectable. *See,*
4 *e.g., Lowndes Products, Inc. v. Brower*, 259 S.C. 322, 328, 191 S.E.2d 761 (1972) ("A trade secret
5 can exist in the unique combination of otherwise known components; although each of its parts,
6 by itself, may be in the public domain, the unified process, design and operation of the combination
7 may be the essence of the secret."). Hence, the alleged secret is the manner and process by which
8 the food is prepared, not the product of the process (i.e., the food itself). *See, e.g., Uncle B's*
9 *Bakery, Inc. v. O'Rourke*, 920 F.Supp. 1405, 1428-29 (N.D.Iowa 1996) (finding a trade secret for
10 a bagel recipe).

11 The court finds difficulty, however, discerning where plaintiffs' trade secret recipes end,
12 and the supposed "plate build instructions" begin. On one hand, plaintiffs claim the plating
13 instructions are specific and detailed instruction for finishing sauces and dish elements. (ECF No.
14 19 at 3-4). On the other hand, they also characterize the instructions as "how to assemble [dishes]"
15 to conform to the brand. (*Id*. at 6; FAC at ¶ 60). These matters are not the same. Plaintiffs must
16 describe the trade secret with sufficient particularity to separate it from matters of general
17 knowledge in the trade or of special knowledge of those persons skilled in the trade. *Imax Corp.*
18 *v. Cinema Techs., Inc*., 152 F.3d 1161, 1164–65 (9th Cir. 1998). Here, plaintiffs have only partially
19 met that burden.

20 Plaintiffs appear to muddle what aspects of the plate build instructions depart from matters
21 of general knowledge in the trade. Plate arrangement, even when password-protected, is not a
22 trade secret. But to the extent that plaintiffs' plate build instructions relate to the overall recipe
23 completion, the court will acknowledge trade secret protection at this stage. This protection
24 extends to the finishing sauces and other specific aspects of the final dish that implicate specific
25 instruction otherwise unascertainable. But the court will not endorse basic plating aesthetics and
26 fresh ingredient garnishment as the same. These aspects of the plating instructions are indeed
27 readily ascertainable to even the untrained eye, and the court will not use its discretion here to
28 expand the definition of trade secrets under the NTSA.

1   A plaintiff's complaint does not need to "spell out the details of the trade secret." *Autodesk,*
2   *Inc. v. ZWCAD Software Co.*, 2015 WL 2265479, at *5 (N.D. Cal. May 13, 2015). Nor does a
3   plaintiff need to plead trade secrets with extensive detail beyond what is required to put the
4   defendant on notice of the boundaries of the trade secret. *See T-Mobile USA, Inc. v. Huawei Device*
5   *USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015). But plaintiffs must allege that plating
6   instructions are comprised of more than merely password-protected instruction on dish assembly
7   and matters that would otherwise be well-understood in the restaurant business. The court
8   therefore finds plaintiffs may claim trade secret protection for only their recipes and what logically
9   falls under that definition.

10  *2. Misappropriation under Nevada law*

11  Misappropriation is the acquisition of a trade secret through improper means. *See* NRS
12  600A.030(2). Despite plaintiffs alleging protectable trade secret recipes, there are insufficient
13  facts to support a misappropriation claim. Improper means is defined under Nevada law as:

14  (a) theft; (b) bribery; (c) misrepresentation; (d) willful breach or willful inducement of a breach of duty to maintain secrecy; (e) willful breach or willful inducement of a breach of a duty imposed by common law, statute, contract, license, protective order, or other court or administrative order; and (f) espionage through electronic or other means."

17  NRS 600A.030(1).

18  The court cannot ascertain what 'improper means' plaintiffs invoke here. Plaintiffs allege
19  in the FAC that "Bua Group was never given access to the trade secret recipes." (FAC at ¶ 126).
20  But plaintiffs also claim in their opposition that Bua Group *did* have access to the recipes "[b]y
21  nature of the parties' sales agreement." (ECF No. 19 at 4). Plaintiffs argue Bua Group wrongfully
22  accessed the trade secrets *for the purpose of reverse-engineering* the recipes. (FAC at ¶ 127)
23  (emphasis added). But then claim Bua Group sells entirely counterfeit recipes for which plaintiffs
24  have no knowledge of or influence over. (*Id.* at ¶ 64).

25  Bua Group contends these allegations are factually inconsistent with a misappropriation
26  claim, and the court agrees. First, whether Bua Group indeed had direct access to the recipes is
27  imperative to plaintiffs' claim that Bua Group "wrongfully and improperly accessed" the recipes.
28  Plaintiffs' disclosure of their recipes to a licensee would not destroy its status as a trade secret, but

- 7 -

1   such contradiction in the pleadings prevents this court from finding a cognizable claim for
2   misappropriation.
3       Second, plaintiffs cannot argue Bua Group is reverse engineering plaintiffs' trade secret
4   recipes while simultaneously claiming they "[have] no idea what Bua Group is serving to the
5   public." (FAC at ¶ 64). Finally, plaintiffs correctly point out that whether reverse engineering is
6   considered "improper" is an open question of law in Nevada. But the matter is well-settled in
7   other courts. *See Aqua Connect, Inc. v. Code Rebel, Inc*., 2012 U.S. Dist. LEXIS 17962
8   (explaining that reverse engineering must be combined with some other improper action in order
9   for it to form a misappropriation claim). Plaintiffs do not provide the court with facts to show Bua
10  Group took some improper action to misappropriate its trade secret recipes.
11      A claim has facial plausibility when the plaintiff pleads factual content that allows the court
12  to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556
13  U.S. at 678. The varying factual allegations prevent this court from stringing together a plausible
14  claim for misappropriation. Accordingly, the court grants defendant's motion to dismiss the trade
15  secret misappropriation claim.

16          *3. Leave to Amend*

17      The court should grant leave to amend even if no request to amend the pleading was made.
18  *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted).
19  Plaintiffs could conceivably cure the deficiencies in their pleading. The court therefore grants
20  plaintiffs leave to amend the complaint within thirty days.

21      B.  Penny Chutima's Motion to Intervene

22      Next, the court considers Penny Chutima's motion to intervene. Penny seeks to intervene
23  for the limited purpose of substituting Lou Abin as a defendant in the derivative capacity. For the
24  reasons explained below, the court finds Penny is entitled to intervene as a matter of right but must
25  file a separate motion to substitute parties.

26          *1. Timeliness*

27      "Timeliness is 'the threshold requirement' for intervention as of right." *League of United*
28  *Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1302 (9th Cir.1997) (quoting *United States v. Oregon*,

913 F.2d 576, 588 (9th Cir.1990)). Courts consider three factors to determine whether a motion to intervene is timely: (1) the stage of the proceedings when the motion is filed, (2) the prejudice to other parties, and (3) the length and reason for any delay. *Id*. Having considered the circumstances of the case, the court finds Penny's motion is timely.

First, despite the extensive filings in this case, it is still in the early stages of litigation and minimal substantive action has occurred. Bua Group argues Penny should have intervened sooner, but the underlying state court action reveals otherwise. *See Bua Group, LLC et al v. Chutima et al*, Case No. A-24-889819-B. Judge Denton found Penny and Lou were irretrievably deadlocked in October 2024, and reaffirmed his finding in January 2025. *Id*. Penny's decision to allow her managerial rights to first be resolved in the state action is not indicative that she wrongly delayed asserting her rights in this action. Nor does the court find objectively brief delay to be a prejudice to the other parties. The court is satisfied that Penny is timely in her action to file.

### 2. *Significant protectable interest*

There is no dispute that Penny has a protectable interest based on her ownership stake and managerial rights in Bua Group. An applicant seeking intervention has a significant protectable interest in an action if: (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims. *Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) (quoting *Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir.1996). Here, Penny's interest in Bua Group is established and protected under Bua Group's operating agreement.

### 3. *Practical impairment*

The third prong asks whether Penny's interests would, as a practical matter, be impaired or impeded by the disposition of this action. The court is satisfied that they would. Generally, after determining that the applicant has a protectable interest, courts have "little difficulty concluding" that the disposition of the case may affect such interest. *Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). Penny is a 50% owner in Bua Group; an adverse decision against the defendant would undoubtedly impair her ownership interest.

. . .

*4. Adequacy of representation*

Finally, the court turns to the adequacy of current representation. The facts underlying the parties' arguments on this prong are the most compelling. Bua Group is irretrievably deadlocked and has been for some time. But the parties dispute the cause of the deadlock and its implication in this case. Bua Group contends that Penny is already represented in this action by nature of Bua Group's involvement as a defendant and Penny's interest as an owner. Penny objects. She claims Lou has exerted unilateral control over Bua Group and the case cannot proceed with an LLC defendant poised to represent only one member's interests. The court agrees with Penny.

The adequacy of representation standard is not an exacting one. Here, the court considers not only whether the existing parties in the case can conceivably represent the applicant's arguments, but also whether they are capable and willing to make those arguments. *Arakaki*, 324 F.3d at 1086. The court is to presume adequacy of representation where the party and the proposed intervenor "share the same ultimate objective." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011). To rebut that presumption, an applicant must make a compelling showing of inadequacy. *Id*.

It is evident that Bua Group is so situated in this litigation that it is either incapable or unwilling to represent Penny's interests. Judge Denton ruled in favor of Penny Chutima to restore her managerial rights in Bua Group and in doing so, solidified that this court now is dealing with a deadlocked defendant. The deadlock creates an unequivocal conflict of interest that prevents Bua Group's members from sharing the same ultimate objective. And because Lou has directed control over Bua Group's litigation, Penny cannot share in Bua Group's objectives either. *See Bua Group, LLC et al v. Chutima et al*, Case No. A-24-889819-B.

The court cannot resolve plaintiffs' claims when faced with such conflict in the defendant. Penny has demonstrated she holds a unique interest in this lawsuit, and one that cannot be adequately represented by the current parties. The court therefore grants Penny's motion to intervene.

*5. Motion to Substitute Parties*

Penny asks this court to intervene for the "limited purpose of substituting Lou in for Bua

1  Group" as a derivative defendant. (ECF No. 72, 73). But the court is not aware of any authority
2  that permits this action on a motion to intervene, nor does Penny's motion provide the court with
3  any precedent for such action. Indeed, the *Maitland* court established deadlocked companies are
4  conflicted and cannot proceed as defendants, but that does not exactly establish a right for one
5  LLC member to intervene and substitute another. *See Maitland v. Int'l Registries, LLC*, 2008 WL
6  2440521, at *2 (Del. Ch. Jun. 6, 2008). Though the court finds Penny is entitled to intervene as a
7  matter of right, she must still file a separate motion in order to make substitutions in parties.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant Bua Group's motion to dismiss (ECF No. 15) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiffs' third claim for misappropriation of trade secrets in the First Amended Complaint (ECF No. 9, 10) is DISMISSED. Plaintiffs have thirty (30) days from this order to choose to file a second amended complaint.

IT IS FURTHER ORDERED that plaintiffs' motion to supplement its motion to enforce (ECF No. 69) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that applicant Pennapa ("Penny") Chutima's motion to intervene (ECF No. 72) be, and the same hereby is, GRANTED. A separate motion must be filed in order to make substitutions in parties.

DATED February 24, 2025.

_____
UNITED STATES DISTRICT JUDGE