# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

TChutima, Inc. dba Lotus of Siam, et al.,

      Plaintiffs

v.

Bua Group, LLC,

      Defendants

Case No.: 2:24-cv-01130-JAD-NJK

**Order Denying Motion to Dismiss, Denying without Prejudice Plaintiffs' Emergency Motion to Enforce and Defendant's Counter Motion to Dissolve the Preliminary Injunction, and Temporarily Staying Dispositive-Motion Briefing**

[ECF No. 39, 96, 174]

TChutima dba Lotus of Siam sues Bua Group, LLC for its unauthorized use of the Lotus of Siam trademark and breach of the parties' trademark-license agreement. A preliminary injunction entered in October 2024 restrains Bua Group from further unauthorized uses of the mark. TChutima moves to enforce that injunction, contending that Bua Group is blatantly violating its terms. Bua Group countermoves to dissolve it, pointing out that evidence produced during discovery undermines the representations that TChutima relied on to obtain the injunction. Bua Group also moves to dismiss TChutima's second-amended complaint, arguing that it contains new allegations that exceed the court's order granting leave to amend, that TChutima has failed to name an indispensable defendant, and that this case should be subsumed into an earlier-filed state-court case that is adjudicating a dispute over the ownership and control of Bua Group.

I deny Bua Group's motion to dismiss because it fails to show that TChutima's second-amended complaint so exceeds the court's leave order that dismissal or striking the new allegations is an appropriate remedy. Bua Group also doesn't meet its burden to show that the party it claims is indispensable cannot be joined, so its joinder-based dismissal arguments are

unpersuasive. And the state court stayed Bua Group's trademark-related claims in that forum because TChutima first raised those issues in this court, so Bua Group's contention that the state court is the first-filed, proper venue to litigate those claims is meritless.

I also deny without prejudice the parties' dueling motions to enforce or dissolve the preliminary injunction. Myriad factual and legal developments in this case have rendered the briefings on this issue (which are now several months old) unhelpful. The status of the parties' trademark agreement, Bua Group's pending appeal of the preliminary injunction, and uncertainty over the propriety of Bua Group's position as a defendant given its deadlocked status put this case in a posture that is very different from where it was when the preliminary injunction was issued. So I deny without prejudice those motions and stay any renewed briefing on the injunction issue until the pending motion to substitute related to Bua Group is resolved. I also stay the parties' dispositive-motion deadline until further order by this court.

## Background[1]

### A.    TChutima licenses its trademark to open additional Lotus of Siam restaurants.

Lotus of Siam is a well-known Thai restaurant in the Las Vegas valley, owned by Chef Saipin Chutima and her husband Suchay Chutima and operated by TChutima, Inc.[2] At around the same time that the original restaurant closed indefinitely after catastrophic flooding,[3] Chef Chutima's daughter Pennapa (Penny) opened a second location commonly known as Lotus of

---

[1] ECF No. 170 at 2–3, ¶¶ 9–10. The parties are aware of the facts of this case. This brief overview is just that: a summary of the basic dispute before the court. The facts in this introduction have been compiled from TChutima's second-amended complaint, Bua Group's motion to dismiss, countless other filings by the parties, and court orders. Nothing in this section should be construed as a finding of fact.

[2] I refer to the plaintiffs collectively as "TChutima" throughout this order.

[3] ECF No. 170 at 4, ¶ 18.

1  Siam Flamingo.[4]  TChutima licenses the Lotus of Siam trademark to Penny's LLC

2  (Lotuschutima), approved the initial menu at the Flamingo location, prepares "its own trade-

3  secret recipes, under the direction of Chef Chutima," and delivers the prepared products to the

4  Lotus Flamingo chefs, who finish the recipes following Chef Chutima's instructions.[5]

5        Following the success of the Flamingo location, Penny teamed up with Louis Albin

6  (Lou), a "Chutima-family outsider and night-club aficionado" to open three more Lotus of Siam

7  restaurants in Las Vegas.[6]  Penny and Lou formed Bua Group, LLC to operate the restaurants,

8  and Bua Group and TChutima, Inc. entered into a trademark-license agreement governing Bua

9  Group's use of the registered Lotus of Siam trademark.[7]  The agreement contains an approval

10 process for Bua Group's use of the mark and asserts Chef Chutima's right to create the initial

11 menus for the new restaurants, train their staff, and periodically update their menus and staff-

12 training policies.[8]  It also obligates Chef Chutima to "make periodic personal appearances" at the

13 new restaurants.[9]

14 **B.    Disputes between Bua Group and TChutima over the trademark agreement give**
15 **      rise to lawsuits.**

16       Bua Group opened its first Lotus of Siam restaurant under the trademark-license

17 agreement at the Red Rock Casino & Hotel in the Las Vegas suburbs.[10]  Penny and Lou created

18

19 _____

[4] *Id.* at 4, ¶¶ 19–20.

20 [5] *Id.* at 4, ¶¶ 21–23.

21 [6] *Id.* at 6–7, 9, ¶¶ 36–37, 60 (cleaned up); ECF No. 208-16 at 2 (trademark-license agreement).

   [7] ECF No. 170 at 7, ¶¶ 40–41.
22 [8] *Id.* at 7, ¶ 46; ECF No. 208-16 at 4.

23 [9] ECF No. 208-16 at 4.

   [10] ECF No. 170 at 7, ¶ 37.

Bua Redrock, LLC, a subsidiary wholly owned by Bua Group at the time,[11] to operate that restaurant.[12] Bua Redrock sublicensed the rights under the trademark-license agreement from Bua Group.[13] While initially, the parties operated harmoniously—TChutima created the initial menu, delivered trade-secret components of the restaurant's dishes, and trained the Lotus Red Rock kitchen staff on how to complete the dishes—the working relationship between Chef Chutima, Penny, and Lou soon began to sour.[14] According to the complaint, Lou began making changes to the restaurant's atmosphere by, for example, hosting champagne-party brunches with a live DJ and scantily clad dancers. He also changed the menu, adding non-Thai dishes like Iberico Pork and chicken & waffles.[15] A rift grew between Lou and Penny (who, according to Lou, sided with Chef Chutima in some of the parties' disputes), eventually leading to a stalemate about how Bua Group should be run.[16]

### 1. State-court litigation ensues over Bua Group's sublicense to Bua Redrock and the dispute between Penny and Lou.

In December 2023, TChutima sent a notice-of-breach letter to Bua Group, asserting that it breached the agreement by assigning its rights under the trademark-license agreement to Bua

---

[11] It appears that, at some point, outside investors took control of a small percentage of Bua Redrock. *See* ECF No. 174 at 3 (Bua Group's motion to dismiss, representing that Bua Group owns 85% of Bua Redrock, and that the remaining 15% is "owned by other investors").

[12] ECF No. 175-6 at 11 (stipulation in state-court case, *Bua Group, LLC v. Chutima*, Case No. A-24-889819-B). I take judicial notice of filings in state court, but I do not take as true the facts asserted in those filings. State-court filings attached to various filings in this court are relied on here to the extent that they provide context to the parties' conduct throughout these proceedings.

[13] ECF No. 175-5 at 6, ¶ 23 (state-court complaint).

[14] ECF No. 170 at 8–9, ¶¶ 52–60.

[15] *Id.* at 10–15, ¶¶ 61–79.

[16] *Id.* at 14, ¶ 72.

Redrock.[17]  In response, Bua Group sued TChutima and Penny in state court, alleging that TChutima breached the trademark-license agreement first, Penny breached Bua Redrock's operating agreement, and Penny violated her fiduciary duties to Bua Group and Bua Redrock.[18] Bua Group also sought a declaration "that it did not assign its rights" under the trademark-license agreement "to any entity, and therefore did not materially breach" the agreement.[19]  In April 2024, TChutima stipulated in that state-court case to "withdraw its termination in hopes of avoiding a lawsuit with Bua Group" and to "allow the state action to focus on the primary [controversy], an internal dispute between the co-equal managing members of Bua Group."[20] That stipulation seemingly put an end to the dispute concerning Bua Redrock's sublicense.[21]

But once that issue was settled, TChutima allegedly uncovered additional, flagrant abuses of its trademark.  It claims that Bua Group has stopped buying proprietary goods from TChutima and, "[s]ince April 2024, Bua Group has sold its own imposter counterfeit dishes" with the intent to "deceive the public into believing they [are] authentic Lotus of Siam dishes."[22]  Bua Group has also "repeatedly denied Chef Chutima any access to train the staff or update the menu at Lotus Red Rock."[23]  All of these actions have been allegedly orchestrated by Lou, who has "lock[ed] Penny out of any management of Bua Group" and maintains that he "can direct what is

---

[17] ECF No. 175-5 at 6, ¶ 33.

[18] *Id.* at 9–13.

[19] *Id.* at 13, ¶ 79.

[20] ECF No. 206 at 4, ECF No. 175-6 (stipulation).

[21] I express no opinion on the facts or merits of the state-court dispute involving Bua Group, Bua Redrock, and Penny.  I mention these developments to add context to the dispute before this court.

[22] ECF No. 170 at 15, ¶ 79.

[23] *Id.* at 17, ¶ 88.

served under [TChutima's] trademark at Lotus Red Rock."[24]  In May 2024, TChutima sent another notice-of-breach letter citing Bua Group's unauthorized uses of the mark, misappropriation of trade secrets, and refusal to allow Chef Chutima to access the Lotus Red Rock kitchen or train its staff.[25]

### 2. *TChutima sues Bua Group in federal court for trademark infringement and related state-law claims, and the state court stays Bua Group's attempts to add trademark-related claims to the ongoing litigation in that forum.*

According to TChutima, Bua Group failed to cure its violations of the trademark-license agreement.[26]  So in June 2024, TChutima brought this lawsuit in federal court, alleging that Bua Group infringed upon the Lotus of Siam trademark under the Lanham Act, misappropriated trade secrets, and breached the trademark-license agreement by attaching the mark to unauthorized dishes, products, and promotions.[27]  It also sought declaratory relief "to determine [the] rights, status, obligations, or other legal relations under" the trademark-license agreement.[28]

About a week later, Bua Group amended its state-court complaint to seek declaratory judgment interpreting the trademark-license agreement in a manner that would allow Bua Group to "affix the Lotus of Siam Trademark to any menu item [and advertisement] of Bua Group's choosing without first seeking TChutima's authorization" and "to declare that Bua Group can affix the Lotus of Siam Trademark to the dishes it serves to the public that are undisputedly not Chef Chutima's dishes."[29]  The state court granted TChutima's motion to stay litigation on those

---

[24] *Id.* at 16, 20, ¶¶ 82, 110.

[25] *Id.* at 17, ¶ 90.

[26] *Id.* at 18, ¶ 95.

[27] *See* ECF No. 1.

[28] *Id.* at 16, ¶ 90.

[29] ECF No. 206-2 at 3–4 (state-court order granting TChutima's motion to stay proceedings).

1  claims, noting that TChutima had already filed a trademark-infringement lawsuit in federal court

2  that "overlaps many of the same trademark-related questions and issues that Bua Group

3  subsequently raised to [the state court] in its amended complaint . . . ."[30]

4      The state-court case has since been proceeding primarily on issues raised by Penny and

5  Lou's disputes concerning the operation of Bua Group and Bua Redrock.  Because Penny and

6  Lou are "irretrievably deadlocked . . . on issues significant to managing the companies' business

7  and affairs," the state court appointed a temporary receiver for Bua Group to break any ties

8  concerning the companies' operations.[31]  In April 2025, the state court also disqualified Pisanelli

9  Bice PLLC—the law firm that Lou unilaterally hired—from representing Bua Group, finding

10  that the firm couldn't simultaneously represent the interests of Lou and Bua Group without

11  creating a potential conflict.[32]

12  **C.  TChutima moves to enforce—and Bua Group moves to dissolve—the injunction in
13      this case, although several developments suggest that the briefing on those issues is
        stale.**

14      In October 2024, United States District Judge James C. Mahan[33] granted TChutima's

15  motion for a preliminary injunction in this case prohibiting Bua Group from using the Lotus of

16  Siam trademark in any manner that wasn't previously authorized by TChutima.[34]  Bua Group

17

18

19

---

20  [30] *Id.* (cleaned up).

21  [31] ECF No. 200-2 (state-court order appointing temporary receiver).

22  [32] ECF No. 200-3 (state-court order disqualifying Pisanelli Bice from representing Bua Group
    and Bua Redrock).

23  [33] Judge Mahan recused from this case on June 3, 2025.  ECF No. 224.  It was reassigned to me
    later that day.  ECF No. 225.

[34] ECF No. 29.

appealed that decision,[35] and that appeal remains pending before the Ninth Circuit.[36]  About a month after the injunction was entered, TChutima filed an emergency motion to enforce the injunction, claiming that Bua Group was "brazen[ly] and knowing[ly]" violating the court's order.[37]  In January 2025, Bua Group moved to dissolve the injunction, arguing that evidence obtained through discovery highlighted "substantial discrepancies with the evidence and argument presented" in support of TChutima's original injunction motion.[38]

Material developments since those filings have altered the landscape of this dispute.  In February 2025, Penny was granted leave to intervene in this case for the express purpose of moving to substitute Lou for Bua Group as a derivative defendant.[39]  She argued in her intervention motion that Lou could not continue representing Bua Group's interests in light of the state court's finding that management of Bua Group was deadlocked so Bua Group needed to maintain a neutral position separate from the positions of Penny and Lou.[40]  While Judge Mahan granted Penny's motion to intervene, he explained that she needed to file a separate motion to substitute in order for the court to consider that relief.[41]

Penny instead filed a motion to disqualify Pisanelli Bice from continuing to represent Bua Group following the state-court's order granting that relief in that forum.[42]  Earlier this month, United States Magistrate Judge Nancy J. Koppe denied that motion, finding that "Penny

---

[35] ECF No. 33.

[36] *See* Ninth Circuit Appellate Case No. 24-6745.

[37] ECF No. 39.

[38] ECF No. 96.

[39] ECF No. 160.

[40] ECF No. 124 at 3–4.

[41] ECF No. 160.

[42] ECF No. 200.

fails to show that her concerns cannot be addressed through less drastic remedies, namely filing a motion to substitute Lou as a derivative defendant."[43]  Penny then filed a motion to substitute and an objection to Judge Koppe's disqualification ruling.[44]  So the propriety of Bua Group's involvement in this case, while represented by lawyers chosen by Lou, remains unsettled.

TChutima has also introduced another wrinkle: it now claims that it has terminated the trademark-license agreement with Bua Group.  In a motion to supplement filed in January 2025, TChutima revealed that, on December 20, 2024, it the plaintiffs "exercised their rights under § 5.1 of the [a]greement to terminate Bua Group's license to use the [t]rademark . . . ."[45]  Bua Group appears to contend that the termination wasn't valid.[46]  Neither party has briefed how this development may affect the continued force of the injunction, which was issued to preserve the status quo as it stood when the trademark-license agreement was undoubtedly in effect.

**D.    TChutima files a second-amended complaint, which Bua Group moves to dismiss.**

In July 2024, Bua Group moved to dismiss the misappropriation-of-trade-secrets claim in TChutima's first-amended complaint.[47]  Judge Mahan granted that motion in February 2025 and gave TChutima 30 days to amend its complaint because it "could conceivably cure the deficiencies" in its pleading.[48]  TChutima filed a second-amended complaint by that deadline,[49]

---

[43] ECF No. 230.

[44] ECF Nos. 236, 239.

[45] ECF No. 69 at 3.

[46] ECF No. 165 at 2.

[47] ECF No. 15.

[48] ECF No. 60.

[49] ECF No. 170.  There are two copies of the second-amended complaint on the docket.  One, ECF No. 170, was previously sealed.  It has been unsealed by court order.  ECF No. 228.  The other, ECF No. 171, is a redacted version.  Because the unredacted version is now publicly

which Bua Group now moves to dismiss.[50]  It contends that TChutima exceeded the court's leave

order because the second-amended complaint contains new allegations that don't relate to its

trade-secrets claim.[51]  It also argues that this case should be dismissed because TChutima hasn't

sued Bua Redrock, which is a sublicensee of the Lotus of Siam trademark and allegedly operates

Lotus Red Rock.[52]  Bua Group insists that Bua Redrock is an indispensable party and thus,

because it hasn't been joined, this case should be dismissed under Federal Rule of Civil

Procedure (FRCP) 19(b).[53]  Bua Group lastly accuses TChutima of engaging in forum shopping

and urges this court to dismiss this federal case so their dispute can play out in the state-court

action instead.[54]

## Discussion

**A.    Bua Group has not sufficiently shown that TChutima's second-amended complaint violated this court's orders or requires striking new allegations.**

Bua Group's first argument in its motion to dismiss stems from Judge Mahan's order

granting in part Bua Group's motion to dismiss TChutima's first-amended complaint.  That first

motion to dismiss targeted only TChutima's claim for misappropriation of trade secrets,

contending that the first-amended complaint failed to allege sufficient facts to state that claim.[55]

Judge Mahan agreed and granted the motion, but he gave TChutima leave to amend because it

---

available, the redacted version is no longer needed.  To clean up the docket and make clear
which document is the operative complaint, I direct the Clerk of Court to strike ECF No. 171.

[50] ECF No. 174.

[51] *Id.* at 7–8.

[52] *Id.* at 9–11.

[53] *Id.*

[54] *Id.* at 11–15.

[55] *See* ECF No. 15.

"could conceivably cure the deficiencies" in the complaint.[56]  Within the time allotted by the court, TChutima filed its second-amended complaint.[57]  But, Bua Group contends, the new complaint adds allegations unrelated to the trade-secrets claim, so it exceeds the scope of the court's order granting leave to amend that claim only.[58]  Bua Group doesn't seem to seek dismissal on this basis; it instead seeks an order under FRCP 12(f) striking a host of new allegations that it believes are unrelated to the misappropriation of trade secrets.[59]

Bua Group's attempt to shoehorn its request to strike into its motion to dismiss violates this district's local rules.  Local Rule IC 2-2(b) instructs parties to file separate documents for each type of relief requested.  Asking the court to strike material in the complaint requests relief materially different from a motion otherwise seeking dismissal.  On that basis alone, I am not inclined to grant Bua Group's request.

But even if Bua Group did properly move to strike portions of the complaint, its request fails on its merits.  It relies on FRCP 12(f), which permits the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, and scandalous matter."[60]  "The function of a 12(f) motion . . . is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."[61]  In deciding a motion to

---

[56] ECF No. 160 at 8.

[57] *See* ECF No. 170.

[58] ECF No. 174 at 8.

[59] *Id.*

[60] *Whittlestone, Inc. v. Hand-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing Fed. R. Civ. P. 12(f)).

[61] *Id.* (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) (internal quotation marks omitted).

strike, courts may not resolve disputed and substantial factual or legal issues.[62]  Nevada district courts frequently characterize a Rule 12(f) motion as "an extreme and drastic remedy" that "is heavily disfavored."[63]  "Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint."[64]

Bua Group is attempting to do here what the Ninth Circuit has expressly prohibited: use FRCP 12(f) to dismiss select portions of TChutima's complaint.  It points to nothing redundant, immaterial, impertinent, or scandalous about the newly added allegations.  And even if I overlook Bua Group's references to Rule 12(f), it has not shown that TChutima's additions truly violated the court's prior order permitting amendment.  The vast majority of the paragraphs that Bua Group cites as new, unauthorized allegations are directly related to TChutima's claims concerning its trade secrets.[65]  The court will not parse every single paragraph that Bua Group

---

[62] *Id.*

[63] *See Novva Ausrustung Grp., Inc. v. Kajioka*, No. 2:17-cv-01293, 2017 WL 2990850, at *2 (D. Nev. Jul. 3, 2017) (citing *Armed Forces Bank, N.A. v. FSG-4, LLC*, No. 2:11-cv-654, 2011 WL 5513186, at *4 (D. Nev. Nov. 10, 2011)); *Roadhouse v. Las Vegas Metro. Police Dep't*, 290 F.R.D. 535, 543 (D. Nev. 2013) ("Given their disfavored status, courts often require a showing of prejudice by the moving party before granting the requested relief.") (quotation omitted); *Nev. Fair Hous. Cntr., Inc. v. Clark Cnty.*, 565 F. Supp. 2d 1178, 1187 (D. Nev. 2008) ("A 12(f) motion is a drastic remedy and is generally disfavored by federal courts."); *see also Wein v. Kaiser*, 647 F.2d 200, 201 (D.C. Cir. 1981) ("[M]otions to strike, as a general rule, are disfavored."); *Calaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1334, 1339 (N.D. Cal. 1991) (same).

[64] *Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) (citing 5a Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380, at 782 (1969)).

[65] *Compare* ECF No. 174 at 8 (listing paragraphs in the second-amended complaint that it contends are unrelated to TChutima's trade-secrets claim) *with* ECF No. 170 at ¶¶ 22–25 (discussing TChutima's methods to protect trade-secret recipes while providing products to the Lotus of Siam Flamingo location); ¶¶ 50–51 (alleging that Lotus Red Rock was authorized to serve dishes made only from TChutima's trade-secret recipes); ¶¶ 54–57 (discussing TChutima's attempts to train staff on how to prepare and serve its trade-secret products); ¶¶ 70–71 (identifying the process by which TChutima prepared and delivered its trade-secret products to Lotus Red Rock); ¶¶ 73–80 (alleging that Lou purchased TChutima's trade-secret products with the intent to create counterfeit dishes and market them as authentic Lotus of Siam products).

1    lists, without elaboration or explanation of how each is improper, in its motion to dismiss.  Bua

2    Group's motion to dismiss or strike on the basis that TChutima exceeds the court's order

3    granting leave to amend is denied.

4

5    **B.    Assuming that Bua Redrock is a necessary party, Bua Group has not met its burden to show that Bua Redrock could not be joined.**

6    Bua Group next contends that this case should be dismissed because TChutima failed to

7    join an indispensable defendant, Bua Redrock.[66]  Bua Group argues that, because it sublicensed

8    its rights under the trademark-license agreement to Bua Redrock, that entity holds a legally

9    protected interest in the subject of this suit.[67]  It also alleges that Bua Redrock is the company

10   that purchased the trade-secret sauces from TChutima and receives all revenues from the

11   operation of Lotus Red Rock.  Because Bua Redrock is a necessary and indispensable party that

12   hasn't been joined under FRCP 19, Bua Group contends, this case must be dismissed.

13   Determining whether to dismiss for failure to join an indispensable party under Federal

14   FRCP 19 is a "three-part inquiry."[68]  First, the court "examines whether the absent party must be

15   joined" under FRCP 19(a)(1).[69]  A party is necessary if either one of two prongs is satisfied: (A)

16   "in that party's absence, the court cannot accord complete relief among existing parties," or (B)

17   "that party claims an interest relating to the subject of the action and disposing of the action in

18   [its] absence may" either (i) "impair or impede the [party's] ability to protect the interest" or

19   (ii) "leave an existing party subject to substantial risk of incurring double, multiple, or otherwise

20

---

21   [66] ECF No. 174 at 9–11.

22   [67] *Id.* at 10–11.

23   [68] *Klamath Irrigation Dist. v. U.S. Bureau of Reclamation*, 48 F.4th 934, 943 (9th Cir. 2022) (quoting Fed. R. Civ. P. 19).

[69] *Id.*

1  inconsistent obligations because of the interest."[70]  Second, the court "determine[s] whether

2  joinder is feasible."[71]  And, third, "if joinder is infeasible," the court must "determine whether, in

3  equity and good conscience, the action should proceed among the existing parties or should be

4  dismissed."[72]  A party requesting dismissal for want of an indispensable party bears the burden[73]

5  and may make the motion "at any stage in the proceedings."[74]

6        Even if I assume for the purposes of this motion that Bua Redrock is a necessary and

7  indispensable party, Bua Group hasn't met its burden to show that its joinder is infeasible.  It

8  merely argues that, "[w]hile the ordinary remedy for failure to join a required party is joinder of

9  those parties," TChutima should be prevented from doing so because adding Bua Redrock (and

10  Lou—a party that TChutima has maintained must be substituted in place of Bua Group) would

11  make the composition of this federal action "mirror" the state-court action.[75]  Bua Group argues

12  that permitting joinder in these circumstances "would only serve to compound the harm caused

13  by [TChutima's] forum shopping."[76]

14        "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is

15  improper, when the absentee is not subject to personal jurisdiction, and when joinder would

16

17

18

---

[70] *Id.* (cleaned up).

19  [71] *Id.*

20  [72] *Id.* (cleaned up).

21  [73] *Clinton v. Babbitt*, 180 F.3d 1081, 1088 (9th Cir. 1999) ("The moving party has the burden of persuasion in arguing for dismissal." (quoting *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992))).

22  [74] *Id.* (cleaned up).

23  [75] ECF No. 173 at 11.

[76] *Id.*

14

destroy subject-matter jurisdiction."[77]  Bua Group addresses none of these circumstances.  And even if the court's interest in curbing forum shopping could be a sufficient reason to find that Bua Redrock's joinder is infeasible, as discussed *infra*,[78] Bua Group's forum-shopping arguments lack merit.  So there has been no adequate showing that Bua Redrock cannot be joined.  Bua Group also fails to address Rule 19(b)'s factors to determine whether, "in equity and good conscience, the action should proceed among the existing parties or should be dismissed."[79]  Because Bua Group fails to meet its burden of persuasion for dismissal under Rule 19, I deny its motion to dismiss on this basis.[80]

**C.    Bua Group hasn't shown that this case should be dismissed in deference to the state-court proceedings.**

Bua Group's final argument for dismissal suggests that the earlier-filed state-court action involving largely the same parties is the more appropriate forum for this dispute.[81]  It alleges that Bua Group first filed suit in state court against TChutima, Chef Chutima, and Penny for declaratory relief under the trademark-license agreement.[82]  It relies on *Brillhart v. Excess*

---

[77] *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (citing Fed. R. Civ. P. 19(a)).

[78] *See infra* at 15–18.

[79] *See* Fed. R. Civ. P. 19(b) (enumerating factors that a court should consider when determining whether dismissal is appropriate).

[80] Because no party requests that this court join Bua Redrock under Rule 19(a)(2), I do not consider that course of action at this time.  My denial of Bua Group's motion to dismiss on Rule 19 grounds does not foreclose any future motion to join Bua Redrock as a defendant, and I express no opinion on the propriety or timeliness of such a motion.

[81] ECF No. 174 at 11.

[82] *Id.*

1  *Insurance Co.*[83] to contend that this court should not adjudicate TChutima's claims to avoid

2  interfering with the state court's parallel proceedings.[84]

3         It doesn't appear that Bua Group's chosen authority is the right fit in this case. *Brillhart*

4  applies to declaratory-judgment actions, but TChutima brings several claims seeking monetary

5  and injunctive relief, too.[85]  The Ninth Circuit has held that, if a suit "seeks more than merely

6  declaratory relief . . . , the entire action should be analyzed under the *Colorado River*

7  framework," not the *Brillhart* framework.[86]  And the abstention doctrine outlined in *Colorado*

8  *River Water Conservation District v. United States*[87] requires that the party seeking dismissal or

9  a stay must show that "there exist exceptional circumstances" to justify the court's surrender of

10  jurisdiction over a case properly brought in federal court.[88]  Because Bua Group doesn't address

11  any of the factors that the Supreme Court or the Ninth Circuit have developed to determine

12  whether a court should cede jurisdiction to a parallel state-court proceeding in a case seeking

13  compensatory relief, I decline to stay or dismiss this case on that basis.

14         But even if the law that Bua Group cites to support its forum-shopping argument applied,

15  it has not presented adequate justifications for dismissing this case in favor of the state-court

16  action.  A district court may exercise its discretion to dismiss a declaratory-relief action if doing

17  so will promote three rationales relied on by the Supreme Court in *Brillhart*: (1) "to avoid having

18

---

19  [83] *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942).

   [84] ECF No. 174 at 12.

20  [85] *See* ECF No. 170 at 33–34.

21  [86] *Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 840 (9th Cir. 2017) (holding that, because the plaintiff's filings "have unfailingly sought damages," its suit is "squarely within the

22  *Colorado River* framework").

   [87] *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

23  [88] *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25 (1983)).

federal courts needlessly determine issues of state law," (2) if the party bringing the federal-court action is "attempt[ing] to avoid state court proceedings by filing declaratory relief actions in federal court," and (3) "to avoid duplicitous litigation."[89]  Bua Group contends that its state-court declaratory-judgment action based on state law was filed first, and proceeding here would require that this federal court weigh in on state-law issues, benefit TChutima's attempt to forum shop, and lead to parallel proceedings.

Bua Group puts an unjustifiable gloss on the facts to support its state-court-deference argument.  While it is true that Bua Group filed its declaratory-judgment action in state court first, it fails to mention that its original claims against TChutima revolved solely around TChutima's attempt to terminate the trademark-license agreement based on Bua Group's sublicense of its rights to Bua Redrock.  TChutima then filed its complaint in federal court, alleging that Bua Group breached the agreement and violated the Lanham Act by using the Lotus of Siam trademark in unauthorized ways.  It was only after TChutima filed this suit that Bua Group amended its state-court complaint to add claims that were duplicative of those TChutima already raised here.  Indeed, when TChutima argued to the state court that those claims were already being litigated here, the state court agreed and stayed all trademark-related claims before it, pending resolution of those claims in this court.  But Bua Group conveniently fails to mention in its motion that the state court already considered this issue and stayed the very claims that it asserts are proceeding in that forum.

Bua Group also argues that the interests of judicial economy and efficiency counsel leaving this matter to state court,[90] without accounting for the fact that the parties have engaged

---

[89] *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991) (citing *Brillhart*, 316 U.S. at 495–97).

[90] ECF No. 209 at 10.

1  in extensive discovery here while engaging in no such discovery on the trademark-related issues

2  in state court.  It fails to address how requiring the parties to revive those claims in state court at

3  this point would be more efficient or economical.  So I decline to dismiss this case in deference

4  to the stayed state-court action, and I deny Bua Group's motion to dismiss in its entirety.

5  **D.    The parties' motions related to the preliminary injunction are denied without**

6  **prejudice to the refiling of updated motions that address the facts and circumstances that have evolved since they were filed.**

7         After Judge Mahan granted TChutima a preliminary injunction prohibiting Bua Group's

8  unauthorized uses of the Lotus of Siam trademark, TChutima moved to enforce the injunction,

9  claiming that Bua Group had instead ramped up its misuse of the mark.  A few months later, Bua

10 Group moved to dissolve the injunction, arguing that evidence obtained in discovery undermined

11 some representations TChutima's made in its preliminary-injunction motion.  While those

12 motions have been pending, significant developments have dramatically altered the factual

13 landscape of this case.  Bua Group appealed the injunction, and that appeal is still pending before

14 the Ninth Circuit.  TChutima now asserts that it terminated the trademark-license agreement that

15 the preliminary injunction was largely founded on.  And much ink has been spilled on the issue

16 of whether Bua Group can continue being represented by lawyers hired by Lou without Penny's

17 consent.  Although Judge Koppe has denied Penny's motion to disqualify Lou's lawyers, Penny

18 has now filed a motion to substitute Bua Group for Lou as a derivative defendant and has lodged

19 an objection to Judge Koppe's order.  There are surely countless other developments reflected in

20 the hundreds of pages of briefing that fills the docket in this case.

21        The undersigned judge was assigned to this matter just weeks ago and in the midst of this

22 evolving dispute, and for me to rule on the motions as they were briefed months ago risks

23 missing or confusing crucial information that the parties may know by heart, but that I am just

getting caught up on. It's unclear whether the legal basis upon which the injunction was granted—the authorized-use restrictions in the parties' trademark-license agreement—remains sound in light of the parties' dispute over whether TChutima has since terminated that agreement. And if the termination is valid, Bua Group's pending appeal complicates this court's authority to consider altering or dissolving the injunction in response to the changed circumstances. While this court maintains authority to preserve the status quo pending the appeal of an interlocutory order, "it may not finally adjudicate substantial rights directly involved in the appeal."[91] The months-old briefing doesn't satisfactorily address these issues.

Plus, it's not yet clear whether Bua Group is properly represented in this case. Decisions concerning Lou's substitution and Bua Group's representation complicate the question of whether the briefing on these issues fairly represents Bua Group's position, or whether it just promotes Lou's version of events. Having that matter resolved before addressing the injunctive-relief battle will promote efficiency and conserve the resources of this court and the parties, so a pause and a reset are in order. The parties' motions concerning the injunction are thus denied without prejudice, and any further briefing on this issue is stayed pending a resolution of the motion to substitute and objection to the magistrate judge's order denying disqualification. Once those matters are resolved, the court will set a briefing schedule for the parties to refile their injunction-related motions if they wish to do so. Any future briefing related to the injunction must address the effect of TChutima's alleged December 2024 termination of the parties' agreement, as well as the jurisdictional impact of Bua Group's pending appeal on this court's ability to fashion relief. And to ensure that some of these issues are resolved before the parties

---

[91] *McClatchy Newspapers v. Cent. Valley Typographical Union*, 686 F.2d 731, 724 (9th Cir. 1982).

flood the court with summary-judgment motions, I stay the disposition-motion deadline until further order.

### Conclusion

IT IS THEREFORE ORDERED that Bua Group's motion to dismiss **[ECF No. 174] is DENIED**.  Bua Group must file an answer in accordance with Federal Rule of Civil Procedure 12(a)(4).

IT IS FURTHER ORDERED that the Clerk of Court is directed to **STRIKE ECF No. 171**, as it is a redacted version of the operative, unredacted, and publicly available second-amended complaint (ECF No. 170).  Maintaining both versions of the complaint on this docket is redundant and confusing.

IT IS FURTHER ORDERED that the motions to enforce and dissolve the preliminary injunction **[ECF Nos. 39 and 96] are DENIED without prejudice to the parties' ability to refile** those motions at a later date.  Following resolution of intervenor Pennapa Chutima's motion to substitute and objection to the magistrate judge's disqualification ruling, this court will set a briefing schedule for those renewed motions.

IT IS FURTHER ORDERED that **the parties' deadline to file dispositive motions is STAYED** until further order by this court.

_____
U.S. District Judge Jennifer A. Dorsey
June 26, 2025